AO 91, Rev. 11/82 BH

# CRIMINAL COMPLAINT

# 13-028

| United States District Court | DISTRICT<br>Eastern District of Pennsylvania |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>DWIGHT BERRY,<br>ANTONIO ELLIS,<br>JERMAU JOHNSTON, and<br>ASKIA WASHINGTON | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br><br>13-316 |

Complaint for violations of: Title 18, United States Code §§ 1951, 924(c), and 2

| NAME OF JUDGE OR MAGISTRATE<br>Honorable CAROL SANDRA MOORE WELLS | OFFICIAL TITLE<br>US Magistrate Judge | LOCATION<br>Philadelphia, PA |
|---|---|---|
| DATE OF OFFENSES<br>In or about February 2013 - In or about March 2313 | PLACE OF OFFENSES<br>Eastern District of PA | ADDRESS OF ACCUSED (if known) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

One: On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants DWIGHT BERRY, ANTONIO ELLIS, JERMAU JOHNSTON and ASKIA WASHINGTON, obstructed, delayed and affected commerce and the movement of articles and commodities in commerce, and attempted to do so, by robbery, in that, defendants unlawfully attempted to take and obtain, and aid and abet the unlawful taking and obtaining of, approximately 10 kilograms of cocaine, a Schedule II controlled substance, from the person or in the presence of another and against his will, by means of actual and threatened force, violence, and fear of injury, immediate and future to his person and property in his possession, that is, by committing a home invasion armed robbery. In violation of Title 18, United States Code, Sections 1951(a) and 2.

Two: On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants DWIGHT BERRY, ANTONIO ELLIS, JERMAU JOHNSTON and ASKIA WASHINGTON, knowingly carried a firearm, and aided and abetted the carrying of a firearm, during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States, that is, attempted commission of a Hobbs Act Robbery, in violation of 18 U.S.C. 1951(a). In violation of Title 18, United States Code, Sections 924(c)(1) and 2.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

### SEE AFFIDAVIT ATTACHED HERETO.

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:
### SEE AFFIDAVIT ATTACHED HERETO.

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title)<br>JOHN F. BOWMAN<br><br>OFFICIAL TITLE<br>Special Agent, ATF |
|---|---|

Sworn to before me and subscribed in my presence.

| SIGNATURE OF MAGISTRATE (1)<br>Carol S. Wells<br>Honorable CAROL SANDRA MOORE WELLS, United States Magistrate Judge | DATE<br>3/15/13 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANTS

I, John Bowman, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter referred to as "ATF"), being duly sworn, state as follows:

1. I am employed as a Special Agent with ATF and have been so employed since July 2002. For five years I was assigned to the ATF High Intensity Drug Trafficking Area (HIDTA) Task Force which investigated large-scale drug trafficking organizations. I am currently assigned to a specialized enforcement group, the ATF Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms and narcotics violations.

2. The information contained in this affidavit is based on my personal knowledge, information provided to me by other law enforcement personnel and my review of recorded conversations. This affidavit is submitted for the limited purpose of securing a criminal complaint charging Dwight BERRY, Antonio ELLIS, Jermau JOHNSTON, and Askia WASHINGTON, with violations of Title 18, United States Code, Sections 1951 (attempt to commit robbery which interferes with interstate commerce), 924(c) (using and carrying a firearm during and in relation to a crime of violence), and 2 (aiding and abetting). Accordingly, this affidavit does not set forth every fact known to me.

3. The information contained in this affidavit is based upon my personal observations and investigation, on information relayed to me by other special agents or other law enforcement officers working with me, my review of recorded conversations, as well as official reports of investigation from law enforcement agencies. Because this application is being submitted for the limited purpose of establishing probable cause to support a criminal complaint

and arrest warrants, I have not included every fact known to me concerning this investigation. I have submitted only those facts and circumstances which I believe are necessary to establish probable cause for the issuance of the criminal complaint and arrest warrants requested herein.

4. In February 2012, a confidential source (hereinafter referred to as "CI") provided me information that led to the initiation of an investigation by me and other members of ATF. The focus of this investigation is Dwight BERRY, a/k/a "Muff," and other individuals who are believed to be involved in violent and drug related crimes. The CI has been a registered ATF informant for approximately the last two years and has proven to be reliable. The CI has provided information which has been corroborated through investigations and which has led to the arrests of eight individuals for charges including Title 18, United States Code, Sections 1951, 924(c), 924(o), 922(g)(1) and 2, and Title 21, United States Code, Section 846, as well as the seizure of a total of five firearms and other items related to the commission of these offenses.

5. In addition, the information provided by the CI in these past investigations as well as during this investigation has been corroborated by, among other things, physical surveillance and other observations by law enforcement officers, police reports, DMV records, housing records, and other public records, consensually recorded telephone calls and meetings, and police interviews. In this investigation, the meetings between the CI, the targets and the Undercover Agent (UC) set forth in this affidavit were recorded. I have reviewed those recordings and they corroborate the information the CI provided about BERRY and BERRY's associates.

6. In or about February 2012, the CI reported to me that a person known to the CI as "Muff," later identified as Dwight BERRY, was involved in selling narcotics and conducting home invasion robberies. The CI stated that in or about August 2012, BERRY approached the

CI and asked the CI if he/she knows anyone he (BERRY) could rob for drugs. This information was immediately reported by the CI to ATF. The CI advised that over the course of the next several months BERRY continued to ask the CI for someone to target for a home invasion robbery.

7. On February 18, 2013, at approximately 3:50 p.m., BERRY met with the CI at the McDonald's parking lot on the 100 block of South 52nd Street in West Philadelphia. This meeting was electronically monitored and recorded. During the meet, BERRY discussed with the CI the prospect of conducting a home invasion robbery of kilogram quantities of cocaine, which BERRY had previously asked the CI to set up. During the conversation, the CI explained to BERRY that he has a friend who is a drug courier for a drug organization in New York. The CI further explained that his friend makes frequent trips to Philadelphia to pick up kilograms of cocaine from a stash location maintained by a drug supplier. BERRY immediately expressed an interest in committing a robbery of the stash location and was willing to meet with the CI's "folks" (ATF undercover agent (UC) posing as the drug courier) to further discuss the details of the robbery. During the conversation with the CI, BERRY further discussed plans to divide the kilos of cocaine that he expects to steal during the intended home invasion robbery. BERRY stated, "We break everything down....we gonna break down, go from there, you know what I'm saying, we break it at the table....it just be a clean cut check for everybody..."

8. On February 20, 2013, the CI and the UC met with BERRY on the 4000 block of City Avenue, Philadelphia, PA. This meeting was electronically monitored and recorded. The purpose of the meeting was to further discuss the planning of the intended home invasion robbery. During the meeting, the UC explained to BERRY that he is a drug courier who picks up kilogram quantities of cocaine from a drug stash house in Philadelphia and transports the

kilograms of cocaine to New York. The UC explained to BERRY that in the past when he has picked up the kilograms of cocaine from the stash house he has observed in excess of 10 kilograms of cocaine at the location. The UC further told BERRY that no money is kept at the location. BERRY immediately expressed interest in committing a home invasion robbery of the stash location. When the UC informed BERRY that there are two males guarding the stash house and they are both armed with firearms, BERRY was not phased and stated over and over, "it's a go," meaning that he was interested in doing the home invasion robbery.

9. As BERRY, the CI and the UC continued to discuss the occupants of the stash house, BERRY stated, "we ain't gotta shoot nobody unless we have to .... if they get crazy, we ready though." Your affiant believes that BERRY is indicating he is willing to shoot the men guarding the stash house if it becomes necessary to do so during the intended home invasion robbery. As the meeting continued, BERRY made it clear that he has a team that will commit the robbery with him and that he is the boss. BERRY stated, "Im the head of the n****s I run around with."

10. On February 26, 2013, the CI met with BERRY to discuss the plan to commit the robbery. This meeting was electronically monitored and recorded. During the meeting, BERRY and the CI further discussed the intended robbery and the breakdown of the kilograms of cocaine that BERRY expects to steal. BERRY stated, "it's a go, like n**** we move out, we do that." Your affiant believes, based on this investigation as well as my training and experience, that BERRY was referring to him and his team of robbers ("we") and that together they commit these type of robberies ("we move out, we do that").

-4-

11.     On March 4, 2013, the CI and UC met with Berry, WASHINGTON and FNU LNU #2 on the 4000 block of City Avenue, Philadelphia, PA. This meeting was electronically monitored and recorded. BERRY and WASHINGTON and FNU LNU #2 arrived at the meeting together. BERRY introduced the two males as the individuals who will be committing the robbery with BERRY, however he did not refer to them by name or nickname. During the meeting, WASHINGTON and FNU LNU #2 expressed their desire to take part in the robbery. During the conversation they discussed the details of the robbery including their willingness to shoot the men guarding the stash house if necessary. WASHINGTON stated, "I ain't gonna hit (shoot) you (referring to the UC), but say if I come there ... I hit him from the rip. I ain't gonna kill him, but I hit him just make him to know that I ain't fucking playing no games." Later during the conversation, WASHINGTON also stated "I'm walking in with my gun out." FNU LNU #2 also participated in the discussion, he inquired about the occupants of the stash house and asked the UC the "best way" to enter the stash house to commit the home invasion robbery.

12.     During the meeting, The UC explained to BERRY and WASHINGTON and FNU LNU #2 that they will have to be able to distribute the kilograms of cocaine after the intended home invasion robbery is complete. BERRY also added there is another "head" (meaning another person who will be involved in the robbery who will be the driver.) BERRY further told the UC that "it's gonna get done," (referring the home invasion robbery). BERRY added, "however it go down, that shit's gotta go down."

13.     On March 5, 2013, at approximately 6:00 p.m., the UC and BERRY met to further discuss the details of the intended home invasion robbery. This meeting was electronically monitored and recorded. While discussing the robbery, BERRY stated, "we are going to have two n****s with the guns, one n**** gonna being tying the n**** up." BERRY

further explained that if BERRY and his conspirators, "... gotta let some shots off ... before the cops get there, we can still get away ... ." BERRY again is indicating he and his associates intend to utilize firearms to commit the intended home invasion robbery. BERRY again advised the UC that there is another male who will be participating in the robbery as the driver.

14. During the meeting, the UC expressed his concern whether WASHINGTON had experience in committing home invasion robberies. BERRY responded that WASHINGTON is a "gun" and "puts work in" (referring to WASHINGTON as a shooter). During the conversation about the intended robbery, BERRY told the UC, "this is what I do." The UC then questioned BERRY whether the planned home invasion was BERRY's first, BERRY responded, "fuck no! "

15. On or about March 12, 2013, the CI called BERRY to inform BERRY that the UC received his instructions that the cocaine would be ready for pick-up at a location that would be determined on March 15, 2013. During the call, the CI and BERRY discussed distributing the 10 or more kilograms of cocaine they intend to steal. BERRY stated the current rate for a kilogram of cocaine is "40" ($40,000). Later the same day, BERRY called CI-59 and stated "everybody is a go;" meaning that BERRY's team is prepared to commit the robbery on Friday March 15, 2013.

16. On March 15, 2013, at approximately 8:10 a.m., BERRY, ELLIS, JOHNSTON and WASHINGTON met with the UC in a parking lot of the Hilton Hotel on Island Avenue, in Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania, for the UC to provide the robbers with the address of house to be robbed. A total of 5 individuals met the UC at that location in 2 vehicles for the purpose of obtaining the location of the robbery. A woman, "NS", drove a Chrysler Sedan with WASHINGTON. The CI drove the Minivan with BERRY, ELLIS and JOHNSTON. The UC drove another vehicle.

17. Once in the Hilton parking lot, WASHINGTON, ELLIS, JOHNSTON, and BERRY got into one of the vehicles with the UC. Once all were inside the vehicle, BERRY instructed the UC to review the details of the planned robbery with everyone. At BERRY'S direction, the UC explained, again, that the target of the robbery was a house at which ten kilograms of cocaine would be found; that the building would be guarded by a man at the door, who carried a firearm; that a second man further inside the home would also be armed; that the second man would have control of the drugs; that the drugs would be stored in a white cooler; and that there would be no money found in the house. The men then discussed their plan of action; that they would all drive to a staging area closer to the target; that when they made their assault on the drug house, two of them would be the first to enter the house; that they would be armed; that they would likely bind the people inside the house; that they would treat the UC, who would be in the house, as if he were another victim to evade the suspicion by the drug dealers. From the hotel, the UC and the 5 member crew proceeded to a parking lot in Southwest Philadelphia where they were arrested. When ATF initiated the arrest, BERRY, WASHINGTON, ELLIS and JOHNSTON were taken into custody.

18. After the defendants were arrested, ATF Special Agents recovered two firearms, ammunition, gloves and zip ties from one of the vehicles. From a second vehicle, Agents recovered gloves, a mask, and lighter fluid.

19. Based upon these facts, I assert there is probable cause to believe that Dwight BERRY, Antonio ELLIS, Jermau JOHNSTON, and Askia WASHINGTON:

    (a) have attempted and aided and abetted in the attempt to commit a Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2;

(b) have used and carried, and have aided and abetted the use and carrying, of firearms during and in relation to a crime of violence (a violation of 18 U.S.C. § 1951) for which they may be prosecuted in a Court of the United States, in violation of 18 U.S.C. § 924(c).

Accordingly, I request that a warrant for the arrest of the defendants issue.

_____
John Bowman, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me
this 15th day of March 2013

_____
HONORABLE CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE