IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED: |
| DWIGHT BERRY,<br>    a/k/a "Muff,"<br>ASKI WASHINGTON,<br>    a/k/a "Ski,"<br>ANTONIO ELLIS,<br>    a/k/a "Pooh,"<br>JERMAU JOHNSTON,<br>    a/k/a "Mau" | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | VIOLATIONS:<br>18 U.S.C. § 1951 (conspiracy to commit robbery which interferes with interstate commerce - 1 count)<br>18 U.S.C. § 1951 (attempted robbery which interferes with interstate commerce - 1 count)<br>21 U.S.C. § 846 (conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine - 1 count)<br>21 U.S.C. § 846 (attempted possession with intent to distribute 5 kilograms or more of cocaine - 1 count)<br>18 U.S.C. § 924(c)(1)(A) (carrying a firearm during and in relation to a crime of violence and to a drug trafficking crime - 1 count)<br>18 U.S.C. § 922(g)(1) (convicted felon in possession of a firearm - 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

**INDICTMENT**

**COUNT ONE**

THE GRAND JURY CHARGES THAT:

    At all times relevant to this indictment:

    1.    The illegal sale, distribution, possession with intent to distribute, and trafficking, of controlled substances, that is, cocaine, are activities which affect interstate commerce.

2. From at least in or around February 2012, through on or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**DWIGHT BERRY,**
a/k/a "Muff,"
**ASKI WASHINGTON,**
a/k/a "Ski,"
**ANTONIO ELLIS,**
a/k/a "Pooh," and
**JERMAU JOHNSTON,**
a/k/a "Mau,"

conspired and agreed, together and with other persons unknown to the grand jury, to commit robbery, which robbery would unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, in that defendants BERRY, WASHINGTON, ELLIS, and JOHNSTON, conspired to unlawfully take and obtain illegal controlled substances, that is, cocaine, from the person and in the presence of other persons against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property in their possession, all in violation of Title 18, United States Code, Section 1951(a), (b)(1), and (b)(3).

## MANNER AND MEANS

It was part of the conspiracy that:

3. Defendant DWIGHT BERRY was introduced by Person #1, a person known to the grand jury, to Person #2, also known to the grand jury, who advised defendant BERRY that Person #2 was seeking help to arrange a robbery of at least ten kilograms of cocaine.

4. Defendants DWIGHT BERRY and ASKI WASHINGTON expressed

2

interest in participating in a home invasion robbery of drug dealers and undertook to plan and recruit the robbers for a home invasion robbery to steal cocaine, the proceeds of which robbery would be divided among defendants BERRY and WASHINGTON, Person #1, Person #2, and the other robbers.

5. Defendants DWIGHT BERRY and ASKI WASHINGTON planned that the robbers would steal cocaine from the victim drug dealers by invading their stash house and using firearms to control the victims.

6. Defendant DWIGHT BERRY recruited defendants ANTONIO ELLIS and JERMAU JOHNSTON, each of whom agreed to carry out with defendants BERRY and WASHINGTON and Person # 2 the planned home invasion robbery to steal cocaine, the proceeds of which robbery would be divided among the conspirators.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants DWIGHT BERRY, ASKI WASHINGTON, ANTONIO ELLIS and JERMAU JOHNSTON, committed the following overt acts, among others, in Philadelphia, in the Eastern District of Pennsylvania:

### The February 18, 2013 Meeting

1. On or about February 18, 2013, defendant DWIGHT BERRY met with Person #1. During their meeting, in response to Person #1's explanation that he had a friend who was a drug courier who knew a location from where a large amount of cocaine could be stolen, defendant BERRY immediately expressed an interest in committing a robbery of the stash location and said he was willing to meet with Person #1's "folks" (Person #2) to further discuss

3

the details of the robbery.

2. Defendant BERRY discussed plans to divide the kilograms of cocaine that he expected to steal during the intended home invasion robbery.

### The February 20, 2013 Meeting

On or about February 20, 2013:

3. As previously arranged, defendant DWIGHT BERRY met with Person #1 and Person #2, whom Person #1 introduced to defendant BERRY.

4. In response to Person #2's explanation that he was a drug courier who picked up kilogram quantities of cocaine from a drug stash house in Philadelphia and had previously observed in excess of 10 kilograms of cocaine at the location, defendant DWIGHT BERRY immediately expressed interest in committing a home invasion robbery of the stash location.

5. When Person #2 informed defendant DWIGHT BERRY that there were two males armed with firearms guarding the stash house, defendant BERRY assured Person #2 that he remained interested in committing the robbery and repeatedly stated, "It's a go." During the conversation with Person #2, defendant BERRY also indicated a willingness to shoot the intended robbery victims if necessary.

### The March 4, 2013 Meeting

6. On or about March 4, 2013, defendants DWIGHT BERRY and ASKI WASHINGTON and Person #3, unknown to the grand jury, met with Person #1 and Person #2. Defendant BERRY introduced defendant WASHINGTON and Person #3 as the individuals who would be committing the robbery with defendant BERRY. Defendant WASHINGTON and

4

Person #3 expressed their desire to take part in the robbery.

7.  Defendants DWIGHT BERRY and ASKI WASHINGTON discussed the details of the robbery, including their willingness to shoot the men guarding the drug stash house if necessary.

8.  Defendant DWIGHT BERRY again assured Person #2 that the home invasion robbery would be committed.

### The March 5, 2013 Meeting

9.  On or about March 5, 2013, defendant DWIGHT BERRY met with Person #1.

10. During their meeting, defendant DWIGHT BERRY again discussed his intention to use firearms to commit the robbery and the possibility that the robbers might have to shoot someone during the robbery. Defendant BERRY specified that two of the robbers would have guns and one robber would tie up the intended victims.

11. Defendant DWIGHT BERRY assured Person #2 that defendant ASKI WASHINGTON had experience in committing home invasion robberies. Defendant BERRY also told Person #2 that "this is what I do," and that the planned robbery was not the first home invasion robbery that defendant BERRY had committed.

### The March 12, 2013 Phone Call

On or about March 12, 2013:

12. During a telephone conversation with Person #1, defendant DWIGHT BERRY discussed the distribution of the 10 or more kilograms of cocaine that they intended to steal and advised that the current price for a kilogram of cocaine was "40" ($40,000).

5

13.     In a second telephone conversation, defendant DWIGHT BERRY told Person #1 that "everybody is a go."

### The March 15, 2013 Attempted Armed Home Invasion Robbery

On or about March 15, 2013:

14.     Defendants DWIGHT BERRY, ASKI WASHINGTON, ANTONIO ELLIS and JERMAU JOHNSTON met with Person #1 at a pre-arranged location in Philadelphia.

15.     Defendants DWIGHT BERRY and JERMAU JOHNSTON got out of the Ford F-150 truck they had arrived in and walked over to Person #1, seated in a minivan. Defendant BERRY asked if defendant BERRY could transfer defendant BERRY's firearms into Person #1's minivan. After Person #1 consented, defendant BERRY walked back to his F-150 truck, removed an Eggo Waffle box containing two loaded firearms and 10 zip ties and carried it over to Person #1's minivan. Defendants BERRY and JOHNSTON entered the minivan, and once inside, defendant BERRY handed the Eggo Waffle box containing the firearms and zip ties to defendant JOHNSTON, who was seated in the minivan's rear seat.

16.     After defendants ASKI WASHINGTON and ANTONIO ELLIS arrived at the location, in a Chrysler 300, defendant JERMAU JOHNSTON told defendant DWIGHT BERRY that defendant JOHNSON needed to get gloves

17.     Defendants DWIGHT BERRY and JERMAU JOHNSTON along with Person #1 drove to a convenience store. Defendants ASKI WASHINGTON and ANTONIO ELLIS followed in the Chrysler 300. Defendants JOHNSTON and ELLIS entered the store, and defendant JOHNSTON purchased gloves to use in the robbery.

6

18. Defendants DWIGHT BERRY and JERMAU JOHNSTON, along with Person #1, drove in the minivan to a second pre-arranged location in Philadelphia to meet Person #2. Defendants ASKI WASHINGTON and ANTONIO ELLIS followed in the Chrysler 300.

19. At the second location, defendants ASKI WASHINGTON and ANTONIO ELLIS and Person #2 entered the minivan, in which defendants DWIGHT BERRY and JERMAU JOHNSON, and Person #1 were already seated. Defendant BERRY instructed Person #2 to review the details of the planned robbery with everyone present.

20. After Person #2 advised the defendants of the location of the stash house, the presence of two armed guards, and the fact that at least 10 kilograms of cocaine were being stored in a white cooler at the stash house but no money would be found there, defendants DWIGHT BERRY, ASKI WASHINGTON, ANTONIO ELLIS, and JERMAU JOHNSTON each confirmed that they wanted to proceed with robbing the stash house.

21. Among other details, defendants DWIGHT BERRY, ASKI WASHINGTON, ANTONIO ELLIS, and JERMAU JOHNSTON discussed how two of them would first enter the house armed, that the other robbers would then follow, that they would likely bind the people inside the house, and that they would treat Person #2, who would be in the house, as if he were another victim to evade suspicion of the drug dealers.

22. Defendant ASKI WASHINGTON left the minivan and entered the Chrysler 300. Defendants DWIGHT BERRY, ANTONIO ELLIS, and JERMAU JOHNSTON, along with Persons #1 and #2, drove in the minivan, which contained the two firearms, 10 zip ties and two pairs of gloves, to the staging area. Defendant ASKI WASHINGTON followed in the Chrysler 300, which contained gloves, a mask, an empty back pack, a can of lighter fluid, and

7

a lighter. When law enforcement officers moved in to arrest defendants BERRY, WASHINGTON, ELLIS and JOHNSTON, defendant BERRY fled on foot and hid to avoid apprehension.

All in violation of Title 18, United States Code, Section 1951(a).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 and 3 through 6 and Overt Acts 1 through 22 of Count One of this indictment are incorporated here.

2. On or about March 15, 2012, in Philadelphia, in the Eastern District of Pennsylvania, defendants

>**DWIGHT BERRY,**
>a/k/a "Muff,"
>**ASKI WASHINGTON,**
>a/k/a "Ski,"
>**ANTONIO ELLIS,**
>a/k/a "Pooh," and
>**JERMAU JOHNSTON,**
>a/k/a "Mau,"

attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery, in that defendants BERRY, WASHINGTON, ELLIS and JOHNSTON attempted to unlawfully take and obtain, and aided and abetted the attempted unlawful taking and obtaining of, property, that is, cocaine, from other persons against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and property, that is, by using loaded firearms to threaten and control the victims and steal cocaine from them.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT THREE

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 and 3 through 6 and Overt Acts 1 through 22 of Count One of this indictment are incorporated here.

2. From at least in or around February 2012, through on or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**DWIGHT BERRY,**
a/k/a "Muff,"
**ASKI WASHINGTON,**
a/k/a "Ski,"
**ANTONIO ELLIS,**
a/k/a "Pooh," and
**JERMAU JOHNSTON,**
a/k/a "Mau,"

conspired and agreed to knowingly and intentionally possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

All in violation of Title 21, United States Code, Section 846.

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**DWIGHT BERRY,**
a/k/a "Muff,"
**ASKI WASHINGTON,**
a/k/a "Ski,"
**ANTONIO ELLIS,**
a/k/a "Pooh," and
**JERMAU JOHNSTON,**
a/k/a "Mau,"

knowingly and intentionally attempted to possess with the intent to distribute, and aided and abetted the attempted possession with intent to distribute of, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

In violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES THAT:

      1.      Paragraphs 1 and 3 through 6 and Overt Acts 1 through 22 of Count One of this indictment are incorporated here.

      2.      On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**DWIGHT BERRY,**
a/k/a "Muff,"
**ASKI WASHINGTON,**
a/k/a "Ski,"
**ANTONIO ELLIS,**
a/k/a "Pooh," and
**JERMAU JOHNSTON,**
a/k/a "Mau,"

knowingly carried, and aided and abetted the carrying of, a firearm, that is, a Haskell, model JHP45, 45 caliber semi-automatic pistol, serial number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds of ammunition, during and in relation to a crime of violence and to a drug trafficking crime, for which they may be prosecuted in a court of the United States, that is, conspiracy to commit attempted robbery which interferes with interstate commerce, in violation of Title 18, United States Code, Section 1951(a), and conspiracy and attempted possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846.

      In violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 18, 2012, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**DWIGHT BERRY,**
**a/k/a "Muff,"**
**ASKI WASHINGTON,**
**a/k/a "Ski," and**
**ANTONIO ELLIS,**
**a/k/a "Pooh,"**

each having been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate commerce a firearm, that is, a Haskell, model JHP45, 45 caliber semi-automatic pistol, serial number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

## NOTICE OF FORFEITURE

THE GRAND JURY FURTHER CHARGES THAT:

As a result of the violations of Title 18, United States Code, Sections 924(c)(1) and 922(g)(1), as set forth in this indictment, defendants

**DWIGHT BERRY,**
a/k/a "Muff,"
**ASKI WASHINGTON,**
a/k/a "Ski,"
**ANTONIO ELLIS,**
a/k/a "Pooh," and
**JERMAU JOHNSTON,**
a/k/a "Mau,"

shall forfeit to the United States of America the firearms and ammunition involved in the commission of these offenses, that is, a Haskell, model JHP45, 45 caliber semi-automatic pistol, serial number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds of ammunition.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 924(d)(1).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**