# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 13-171-02 |
| | : | |
| ASKIA WASHINGTON | : | |

**O R D E R**

    **AND NOW,** to wit, this _____ day of _____, 2014, upon consideration of Askia Washington's Motion For Discovery and Evidentiary Hearing On The Issue Of Racial Profiling/Selective Prosecution, it is hereby **ORDERED** and **DECREED** that Askia Washington's motion is **GRANTED**.  The government shall provide defendant with all requested discovery within _____ days of this Order and a hearing on the matter is set for _____ _____ day of _____, 2014.

 

**BY THE COURT:**

_____
                                                                 J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 13-171-02 |
| | : | |
| ASKIA WASHINGTON | : | |
| | : | |

**MOTION AN MEMORANDUM OF LAW
FOR DISCOVERY AND EVIDENTIARY HEARING ON THE
ISSUE OF RACIAL PROFILING/SELECTIVE PROSECUTION**

COMES NOW defendant Askia Washington, by and through his attorney, Roland B. Jarvis, Esquire, and moves this Court for an Order compelling the United States to identify and/or disclose the discovery material described below and an evidentiary hearing. In support of said motion, defendant incorporates the Pro Se Letter and Exhibits (Document No. 121) filed on or about March 14, 2014 and the following:

Defendant Washington seeks this information in order to prepare a motion to dismiss the Indictment on the basis of racial profiling or selective prosecution of racial minorities by the Philadelphia District Office of the Bureau of Alcohol, Firearms and Tobacco (hereinafter referred to as "ATF"), in complicity with the United States Attorney for the Eastern District of Pennsylvania (hereinafter referred to as "the Government"), in the intentional or grossly reckless targeting the defendant Askia Washington and his co-defendants; all African-American men, and other similarly situated defendants. On information and belief, the prosecution in the instant case is based on the racial identity of the targets as portrayed by confidential informants who were allowed to randomly identify and solicit without proper supervision and by the deliberate

practice of creating and instigating a "sting" operation in the form of a specific type of crime, to wit: a phony robbery of a non-existent drug "stash house".

Furthermore, defendant Washington requests immediate disclosure of time sensitive government data on "sting operations" by ATF here in the Philadelphia region as advanced disclosure of Brady and Jencks Act discovery to confirm or eliminate defendant Washington's allegations of misconduct and selective prosecution involving the classification and targeting of persons of color as willing criminals; a deliberate policy or practice of creating and instigating phony robberies of non-existent drug "drug stash houses."

Defendant Washington's request for an evidentiary hearing is made pursuant to the Fed.R.Crim.P. Rule 29, Fed.R.Crim.P Rule 16, the analogous local rules, the equal protection component of the Due Process Clause of the Fifth Amendment, and the inherent power of the Court to order broader discovery in appropriate cases.  See *Wright and Miller*, 2 Federal Prac. and Pro. Crim., §254, n. 15, 22, 31-3 wherein it is noted that

> The Advisory Committee Note to the 1975 amendments in part: "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."  Courts have taken this seriously, holding that the rule does not limit their "inherent power" to order discovery that goes beyond what the rules authorizes.  In addition, the constitutional compulsion of the "*Brady* rule" may require the Government to disclose matter that goes beyond Rule 16(a)(1)(E) and all other applicable rules and statues.

In further support of his Motion, defendant Washington states as follows:

1.  This case is another in what has become a staple practice of agents and federal Prosecutors - the creation of a fictitious plan to commit an armed robbery of non-existent drugs from a non-existent "drug stash house" in Philadelphia – an urban setting.  The elements are simple.  As demonstrated by the facts in the present case, the Government use of a confidential informant and undercover agent to initiate promote and instigate a legal and factual impossibility

- conspiracy to commit an armed robbery of 10 kilograms of cocaine from a hypothetical Philadelphia drug dealer.  Specifically, an informant and undercover agent purport to have knowledge of numerous stash house operations run by a drug kingpin whose identity and location was known only to the informant and/or undercover agent wherein drugs (invariably cocaine or crack cocaine and always in sufficient quantities to trigger statutory minimum sentences) were stored and guarded by just a few people with guns.  The informant and/or undercover agent purported to have prior knowledge of and access to the hypothetical residence because they were involved in purchasing and/or delivering large quantities of drugs as Couriers.  Hence, the fictional stash house and cocaine would be bait for defendant Washington and his co-defendants and the firearms were to be promoted and provided by the Government.

Using this policy and practice, the Government allowed a confidential informant and agent to search, invariably, and seemingly deliberately, for their prey: African-Americans or Latinos whom they believe possibly would be interested in the commission of a stash house robbery and can be persuaded to act on the Government's legal and factual fiction. Once the identified and the targets are drawn into taking the bait, the cameras and tape recording devices captured meetings and telephone conversations discussing the where, when and how the hypothetical robbery would occur.

However, defendant Washington and his co-defendants, all African-Americans, on information and belief, were arrested without them ever seeing or actually possessing firearms or drugs. The defendants were ultimately indicted by a federal grand jury with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951(a), conspiracy to possess 10 kilograms of cocaine, in violation of 21 U.S.C. §841 and §846 (triggering statutory mandatory minimum sentences and/or high offense scores under the federal sentencing guidelines), and

possession of firearms by convicted felons, in violation of 18 U.S.C. §922(g) and §924(c)(triggering statutory mandatory minimum sentences. Defendant Washington and similarly situated co-defendants are entitled to immediate disclosure of grand jury testimony and evidence of how they returned an Indictment notwithstanding the fact that in the present case, and all similar cases, the drugs upon which the supposed interstate commerce nexus was based never existed, and there was no stash house to be robbed. See for example the Indictment in the present case.  See also, Edna Katherine Tinto, *Undercover Policing, Overstating Culpability,* NYU Law School Working Paper No. 12-04 at p. 49-55 (2012) http://ssrn.com/abstract=2016362 which article, though not focused on targeting of defendants based on race discusses the related law enforcement practice of "sentence manipulation" by which circumstances are deliberately created to ensure a defendant is eligible for a more severe sentence that his criminal conduct would otherwise have been factually justified.

  2. Defendant Washington seeks this Courts assistance in determine whether the Government has engaged in the policy or practice targeting persons of color, principally African Americans but also Latinos, by compelling early disclosure of all successful and unsuccessful phony stash house robbery cases using paid and unpaid confidential informants and undercover agents prosecuted within the Eastern District of Pennsylvania since 2009.

  3. Given the information complied so far (see Paragraphs 4 and 5, *infra*), it appears the Government asserts ignorance or lack of awareness of any policy or practice of targeting minorities by creating phony conspiracies to rob non-existed stash houses of non-existent quantities of cocaine and crack in urban environments. The evidence suggests that the denial of non-targeting of persons of color, the Government, at best, "burying their heads in the sand." See *McGill v. Duckworth,* 944 F.2d 344, 351 (7th Cir. 1991) ("Suspecting that something is true

but shutting your eyes for fear of what you will learn satisfies scienter requirements. Going out of your way to avoid acquiring unwelcome knowledge is a species of intent."); *Woodman v. WWOR-TV, inc.,* 411 F.3d 69, 83-4 (2nd Cir. 2005).

    4.    Upon information and belief, the information currently available to the defense regarding racial profiling and selective prosecution is as follows:

    a.  *United States v. Alhinde Weens and Lamar C. Smith,* Magistrate Case No. 09 583, Criminal No. 09-708 (JHS)[1], in which both defendants were African American.

    b.  *United States v. Charles Bryant, Brian Andrews Sr., Brian Andrews Jr., Shawn Mobley, Tito Hoskins, and Kenyon Williams,* Magistrate Case No. 12-935-M, Criminal No. 12-346 (SD), in which all defendants were African American.

    c.  *United States v. Robert Lamar Whitfield, Marlon Graham, Kareem Long, Najee Murray and Frank Thompson* (Magistrate Case No. 12-1089, Criminal No. 12-418 (JS), in which all defendants are African Americans.

    d.  The instant case, *United States v. Dwight Berry, Antonio Ellis, Jermau Johnston and Askia Washington,* Magistrate Case No. 13-316, Criminal No. 13-171 (JHS), in which all defendants are African American.

    5.    Therefore, upon information and belief, from 2009 to the present, the Government has brought at least four phone stash house robbery cases charging 20 individuals, all African Americans.

    6.    The aforementioned phony stash house cases illustrate a discriminatory law enforcement policy and/or practice by the Government they do not involve the good faith investigation and prosecution of persons actually involved committing crimes in fact rather than in fiction. Rather, in the aforementioned cases confidential informants and undercover ATF

---

[1] The FBI was the primary investigatory agency in the case, using an ATF informant.

agents appear to be engaged in willful and deliberate selection of African Americans to create the illusion of an opportunity to commit what the targets were told will be a lucrative crime – a "tawdry" law enforcement practice in the words of the Seventh Circuit in *United States v. Lewis,* 641 F.3d 773 (7th Cir. 2011). Specifically, as described by the Court in regard to the phony stash house robbery case discussed therein:

> In what's fast becoming a rather shopworn scenario in this court, Lewis, Williams, and Billingsley, like a host of (apparently) unrelated defendants befoer them, <u>were convicted of conspiring to distribut cocaine that didn't exist – cocaine they planned to liberate from a fictional stash house guarded by members of an imaginary Mexican cartel</u>. The sting that ensnared the three defendants here were orchestrated by Bureau of Alcohol, Tabaco and Firearms ("ATF") agent David Gomez in his undercover role as "Loquito." <u>We have seen versions of this sting, which appears a bit tawdry, several times</u>. … <u>We use the word "tawdry" because the tired sting operation seems to be directed at unsophisticated, and perhaps desperate, defendants who easily snap at the bait put out for them by Agent Gomez</u>.

*Id.* 777 (Emphasis added).

7. Defendant Washington request the Courts assistance in compelling the United States Attorney's Office to provide information corroborating the accuracy of information herein.

8. Given the extent and seriousness of the allegations of Government misconduct, defendant Washington requests this Court to compel the Government to immediately disclose policy and practice information regarding its fictitious stash house cases and schedule an evidentiary hearing on the question of whether or not the Government has engaged in prosecutorial misconduct/selective prosecution. In doing so, the Court must consider not only Fed.R.CrimP. 16 and Fed.R.Crim.P. 29, but also its inherent powers to order discovery to serve the needs to the equal protection component of the Due Process Clause of the Fifth Amendment.

See *Wright and Miller*, 2 Federal Prac. And Pro. Crim., §254, n. 15, 22, 31-3. As the Supreme Court said in *United States v. Armstrong,* 517 U.S. 456, 464-65 (1996):

> Of course, a prosecutor's discretion is "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125 (1979). One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, *Boiling v. Sharpe,* 347 U.S. 497, 500 (1954), is that the decision whether to prosecute may not be based on the "an unjustifiable standards such as race, religion or other arbitrary classifications," *Oyler v. Boles,* 368 U.S. 448, 456 (1962). A defendant may demonstrate that the administration of a criminal law is "directed to exclusively against a particular class of persons… with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Yick Wo v. Hopkins,* 118 U.S. 356, 373 (1886).

9. The inherent powers of the Court in the context of the instant case authorize the Discovery sought below despite the decisions in *Armstrong* and *United States v. Barlow,* 310 F.3d 1007, 1010-12 (7th Cir. 2002) because this case is substantially different than those and other selective prosecution cases and the discovery being sought may well impact the Government's burden under *Brady v. Maryland,* 373 U.S. 83 (1963). See for example *United States v. Gilbert,* 75 F.Supp.2d 12, 15 (D. Mass 1999)("Of course, if the Government is aware that race was considered in any way in its decision to seek the death penalty, that information, in the Court's opinion, would have to be divulged pursuant to *Brady v. Maryland)*. See also *United States v. Tuitt, 68 F.Supp.2d 4, 6-9 (D. Mass. 1999)* and *United States v. Jones,* 159 F.3d 969 (6th Cir. 1998).

10. The Defendant herein requests that the Court order an evidentiary hearing and order the Government to produce in advance information specifically listed below. The defense acknowledges that the Court's discovery order may not impinge on the Government's legitimate rights under Fed.R.Crim.P. Rule 16(a)(2) ("this rule does not authorize the discovery or

inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500"). However, in the event any internal government documents contain any evidence of targeting of African American individuals in connection with the instigation of conspiracies to commit phony stash house robberies the Court should order the Government to disclose said documents to the Court for *in camera* by the Court, and that the Court either disclose the information to Defendant under the authority of *Brady v. Maryland*, or, if the Court decides that the documents or information need not be disclosed to the defense, that the Court preserve the information under seal for purposes of appellate review.

      The discovery sought includes but is not limited to the following:

      a. A list by case name, number and the race of each defendant of all phony stash house robbery cases brought by the United States Attorney's Office for the Eastern District of Pennsylvania from 2009 to the present based on investigations conducted by ATF or any other federal law enforcement agency, and any documents that show that the information stated in paragraph 4a-d *supra.* is incorrect.

      b. For each such case listed in response to section "a" above, a statement of prior Criminal contact each investigating federal agency had with each defendant prior to initiating every fictitious stash house robbery. (If all such information for a particular case is contained in the criminal complaint, provision of a copy of the complaint would be a sufficient response).

      c. The statutory or regulatory authority for ATF or any other federal law

enforcement agency to instigate and/or pursue fictitious stash house robbery cases involving any pretext of illegal drugs (e.g. heroin, cocaine, crack, ecstasy, methamphetamine, etc.), or any decision by any federal agency, the Justice Department or the White House to authorize AFT or any other federal law enforcement agency to pursue such cases in the Eastern District of Pennsylvania.

        d.   All national and Philadelphia Field Office ATF manuals, circulars, field notes, correspondence or any other material which discuss "stings", "reverse stings", "phony stash house rip-offs or robberies" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made, and how to ensure that the agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

        e.   All documents that contain information on whether and how supervisors and managers of the Philadelphia Area ATF and other federal law enforcement agencies involved in phony stash house robbery cases sought to determine whether or not its agents and informants were targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house robbery cases, and what actions did the Philadelphia Area ATF (i.e., operating in the Eastern District of Pennsylvania) or other federal law enforcement agency supervisors and managers took to ensure that agents and/or informants were not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

        f.   The number of paid and unpaid confidential informants utilized by the Philadelphia Area ATF from 2009 to the present and the number of those confidential informants

who had access to non-African American or persons of non-African descent who could be targeted for fictitious stash house robbery cases.

   g. The factual basis in each case cited in paragraph 4 and cases produced in response to the above and the cases produced in response to paragraph 10a regarding decisions made to pursue or initiate an investigation against any of the individuals listed as defendants in these cases.

   h. All documents containing instructions given to Assistant United States Attorneys since 2009 regarding the responsibilities of Assistant United States Attorney to ensure that defendants in cases brought by the Office of the United States Attorney for the Eastern District of Pennsylvania have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have not been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

   i. All documents that contain information about all actions taken during the time the United States Attorney for the Eastern District of Pennsylvania regarding all duties and responsibilities of Assistant United States Attorneys for the Eastern District of Pennsylvania to ensure and/or check to determine that defendants in cases brought by the Office of the United States Attorney for the Eastern District of Pennsylvania have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

WHEREFORE, for the foregoing reasons, Defendant Askia Washington requests this Court order a hearing and order the Government to disclose the information requested herein.

Respectfully submitted,

JARVIS LAW ASSOCIATES, P.C.

By: s/Roland B. Jarvis

ROLAND B. JARVIS, ESQUIRE
Attorney for Defendant
1528 Walnut Street, Suite 1401
Philadelphia, PA 19102
215.313.5684
jarvislaw7@gmail.com

Dated: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 13-171-02 |
| | : | |
| ASKIA WASHINGTON | : | |
| | : | |

CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of April, 2014, a true and correct copy of the foregoing Motion has been sent via the Court's electronic filing system or First Class Mail, postage prepaid, to the following:

Salvatore Astolfi, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

Mr. Askia Washington
Inmate No. 69032-066
FDC – Philadelphia
7th and Arch Street
Philadelphia, PA 19106

s/Roland B. Jarvis
_____
**ROLAND B. JARVIS, ESQUIRE**
**Attorney for Defendant**
**Askia Washington**