IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-171-2 |
| ASKIA WASHINGTON | : | |

GOVERNMENT'S RESPONSE TO
DEFENDANTS' MOTION FOR HEARING AND FOR DISCOVERY ON
THE ISSUE OF RACIAL PROFILING/SELECTIVE PROSECUTION

The government, by and through its attorneys, Zane David Memeger, United States Attorney, and Salvatore L. Astolfi, Assistant United States Attorney, submits this response to the defendant's Motion for Hearing and for Discovery on the Issue of Racial Profiling/Selective Prosecution. The defendant's motion is meritless, and should be denied.

## I.    INTRODUCTION

On March 15, 2013, the defendants in this matter were arrested as part of a "sting" operation by the Bureau of Alcohol, Tobacco, Firearms and Explosives, as they attempted to commit the home invasion robbery of a drug stash house. The defendants were indicted on April 11, 2013. Three defendants pleaded guilty, and one defendant – Askia Washington has expressed his intention of pursuing a jury trial.

Defendant Washington filed the instant motion seeking discovery on the alleged issue of selective prosecution. The defendant seeks discovery in aid of a motion to dismiss the indictment on the basis that the government impermissibly targeted the him and the other three defendants because of their race.

The Supreme Court's decisions in United States v Armstrong, 517 U.S. 456 (1996), and United States v. Bass, 536 U.S. 862 (2002) (per curiam), do not permit disclosure of information regarding prosecutorial policies and decisions absent "a credible showing of different treatment

of similarly situated persons." Armstrong, 517 U.S. at 470. Washington has failed to make such a showing, neither discovery nor a hearing is appropriate, and the defendant's motion must be denied.

## II. ARGUMENT

### A. Legal Standard

In order to succeed on a selective prosecution claim, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Armstrong, 517 U.S. at 465 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). In keeping with this "rigorous standard" for proving a selective prosecution claim, the Supreme Court requires "a correspondingly rigorous standard for discovery in aid of such a claim," and requires the defendant to present "some evidence tending to show the existence of the essential elements[.]" Id. at 468.

Federal Rule of Criminal Procedure 16, which governs discovery in criminal cases, does not authorize defendants to examine government documents in preparation for a selective prosecution claim. Id. at 463. Rather, the Supreme Court requires a defendant to make a "credible showing" that "similarly situated individuals of a different race were not prosecuted." Id. at 465. The standard for a selective prosecution claim "is a demanding one," and "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." Id. at 463-64.

In Armstrong, defendants charged with crack cocaine offenses asserted that they were selectively prosecuted by federal authorities on the basis of their race. They presented an affidavit attesting that, in 24 drug trafficking cases handled by the Federal Defender in the district at issue in one year, all of the defendants were black. The district court ordered further discovery, and the government filed a motion for reconsideration, which the district court denied.

The government then refused to comply with the discovery order, and the court dismissed the case. The Supreme Court reversed.

The Supreme Court stated that prosecutorial decisions enjoy a "presumption of regularity," id. at 464, and may be called into question only by "clear evidence" that a prosecutor inappropriately acted based on racial discrimination or some other unconstitutional motive, id. at 465. The Court held that courts must be leery of acting without such clear evidence:

> We explained in Wayte why courts are "properly hesitant to examine the decision whether to prosecute." Wayte, 470 U.S. at 608. Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Id., at 607 []. It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function. "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Id.

Armstrong, 517 U.S. at 465.

Accordingly, the Supreme Court held that a showing of selective prosecution based on race requires proof "that similarly situated individuals of a different race were not prosecuted," id., and the government may not even be directed to provide discovery regarding the issue absent a prima facie showing of such conduct. "Discovery . . . imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Id. at 468. Thus, the Court concluded, discovery may be ordered only where the defense first makes "a

3

credible showing of different treatment of similarly situated persons . . . ." Id. at 470.[1]

The Supreme Court in Armstrong held that the defendants did not meet this threshold requirement. They presented a study showing that all defendants charged in their district with a particular offense during the preceding year were black, and also offered anecdotal claims that Caucasian offenders were not federally charged. The Court found this showing insufficient in the absence of specific proof that similarly situated persons were not prosecuted. "The study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." Id. The Court held that the trial court therefore erred when it required the government to devote its resources to providing any information.

Indeed, neither the Supreme Court nor the Third Circuit has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices. See, e.g., United States v. Hedaithy, 392 F.3d 580, 607-08 (3d Cir. 2004) (district court properly declined discovery regarding the government's decision to charge a group of Arab-Americans with offenses related to cheating on a standardized exam, where the defendants made no showing that similarly situated persons were not prosecuted); United States v. Abuhouran, 161 F.3d 206, 216 (3d Cir. 1998) (rejecting the proposition that a court may examine, absent proof of constitutional wrongdoing, the government's decision not to file a 5K motion, as the information the government would need to produce "is precisely the sort of confidential information concerning

---

[1] The Supreme Court has not limited this analysis to the selective prosecution context, but rather applied it across the board to any issue involving an attempted inquiry into Executive Branch decision-making. See, e.g., Wade v. United States, 504 U.S. 181, 186 (1992) (defendant may obtain discovery and a hearing regarding government's failure to file a § 5K1.1 motion to reduce a defendant's sentence only upon a threshold showing that the government acted based on an unconstitutional motive; "[i]t follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive."); Batson v. Kentucky, 476 U.S. 79, 91 92 (1986) (defendant must make prima facie showing of discrimination in jury selection in order to require response by the government).

ongoing investigations that the government convincingly asserts it should not have to give up."). All of this reflects the general deference afforded to decisions of the Executive Branch regarding whether and whom to prosecute.

These principles are long-settled. For example, in United States v. Berrigan, 482 F.2d 171, 180 (3d Cir. 1973), the defendants were charged in part with sending letters into and out of a federal prison, without permission of the warden, in violation of 18 U.S.C. § 1791. The defendants claimed selective prosecution, and sought to interrogate government attorneys, and to review government files regarding the decision to prosecute, as well as files regarding decisions to prosecute any other violations of Section 1791. The district court refused the request for discovery, citing "a long accepted intolerance toward judicial inquisition into the process whereby prosecutorial decisions are formulated." Id. at 181. The Court of Appeals affirmed, finding no abuse of discretion.

More recently, in United States v. Bass, 536 U.S. 862 (2002), the Supreme Court reaffirmed its unwavering antipathy toward examination of prosecutorial files. A federal grand jury had charged Bass with the intentional killing of two individuals, and the government filed a notice of intent to seek the death penalty. Bass, an African-American, raised a selective prosecution claim and sought discovery regarding racial bias in the government's death penalty decision process. In support of his claim of selective prosecution, Bass presented a Department of Justice report that showed a significant difference between the percentage of white and black prisoners charged by the United States with death eligible crimes. The DOJ report also showed that the United States entered into a plea bargain with 48 percent of white defendants against whom it sought the death penalty, but only 25 percent of black defendants. In addition to the statistical evidence, Bass introduced evidence of statements by high ranking Justice Department

5

officials, including former Attorney General Reno and then-Deputy Attorney General Holder, who expressed concern over the significant racial disparities uncovered by the Justice Department's own report.

The district court found that Bass had presented sufficient evidence of racial bias in the death penalty process to justify further discovery. The government refused to comply with the district court's discovery order, the district court sanctioned the government by dismissing its notice of intent to seek the death penalty, and the Sixth Circuit affirmed the district court's discovery order. In United States v. Bass, 536 U.S. 862 (2002), the Supreme Court, in a unanimous per curiam opinion, summarily reversed the Sixth Circuit, relying on the Armstrong opinion and the absence of any showing of discrimination in particular cases.

The Bass Court explained that statistical data alone was insufficient, in the absence of proof regarding particular similarly situated persons who were treated differently than the defendant. The Court concluded: "Under Armstrong, therefore, because respondent failed to submit relevant evidence that similarly situated persons were treated differently, he was not entitled to discovery . . . . The Sixth Circuit's decision is contrary to Armstrong and threatens the 'performance of a core executive constitutional function.' Armstrong, supra, at 465 []. For that reason, we reverse." Bass, 536 U.S. at 863-64.

### B. The Defendants Has Presented No Evidence That Would Entitle Him to Discovery.

In this case, the defendant has presented no evidence regarding any other case in which persons similarly situated to the defendant were investigated and not prosecuted. Indeed, the sum total of all "evidence" provided by the defendant in support of his selective prosecution discovery demands is an anecdotal list of four cases, including his own – filed over five years, – in which the defendants claim the government charged African American defendants after using

6

a "sting" technique.  This is far less than the evidence submitted to the district court in Armstrong, which the Supreme Court deemed insufficient to merit discovery.

In Armstrong and Bass, as in the instant motion, the issue is not simply a lack of statistics, but rather the absence of evidence regarding particular similarly situated persons who were treated differently than the defendant.  In this situation, discovery into the U.S. Attorney's Office's decision-making is impermissible.  "[R]aw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."  Bass, 536 U.S. at 864 (emphasis in original).  As in Armstrong and Bass, the defendant here has not presented any evidence that any similarly situated person of a different race has not been prosecuted.[2]

The fact that the defendant requests in camera review of any internal government materials that may be responsive to his discovery request does not change this result, in light of the Supreme Court's admonition:

> Judicial supervision in this area, moreover, entails systemic costs of particular concern.  Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.  All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

Wayte v. United States, 470 U.S. at 607-08.  See also Hartman v. Moore, 547 U.S. 250, 263 (2006) (the "presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of

---

[2] The defendant's failure to provide any evidence of discriminatory effect is fatal to his request for discovery.  However, it is also worth noting that the defendant would fail on the second prong of the Armstrong test because he cannot offer any evidence of discriminatory intent.  See Armstrong, 517 U.S. at 465.  Indeed, any suggestion that the defendant was selected on the basis of race would be nonsensical because there is no evidence that the defendant was selected by the government at all.  Washington knows well, and as will be demonstrated at trial, the government's confidential informant was in contact with Washington's codefendant Berry and the plan was hatched from there.  It was Berry who recruited Washington into the plan to commit the robbery, not the government.

such high order should be minimal").

In sum, because the defense has not presented any evidence warranting an extraordinary invasion of the prosecutor's decision-making records with regard to a "core executive constitutional function," Armstrong, 517 U.S. at 465, the government may not be directed to disclose its internal records regarding its prosecutorial decisions.

### III.     CONCLUSION

For the foregoing reason, the government respectfully requests that the defendants' motion be denied.

 

 

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_____/s/_____
SALVATORE L. ASTOLFI
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served by the District Court Clerk's electronic filing system upon:

Roland B. Jarvis, Esquire
1528 Walnut Street, Suite 1401
Philadelphia, PA  19102


    /s/ Salvatore L. Astolfi
SALVATORE L. ASTOLFI
Assistant United States Attorney

Date:   April 28, 2014

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 13-171-2** |
| **ASKIA WASHINGTON** | : | |

## ORDER

AND NOW, this ____ day of _____, 2014, it is hereby ORDERED that the defendant's Motion for Hearing and for Discovery on the Issue of Racial Profiling/Selective Prosecution is DENIED.

BY THE COURT:

_____
HONORABLE JOEL H. SLOMSKY
United States District Court Judge