IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON,

                    Defendant.

CRIMINAL ACTION
NO. 13-171-2

## ORDER

**AND NOW**, this 7th day of August 2014, upon consideration of Defendant's Motion for

Reconsideration (Doc. No. 137), the Government's Response in Opposition (Doc. No. 146), and

Defendant's Reply in Further Support of the Motion (Doc. No. 147), it is **ORDERED** that

Defendant's Motion for Reconsideration (Doc. No. 137) is **DENIED**.[1]

---

[1] On March 15, 2013, Askia Washington ("Defendant") and three other men were arrested in a
Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation, as they attempted
to commit a home invasion and robbery of what they believed to be a cocaine stash house in
Philadelphia. (Doc. No. 127 at 1.) On April 11, 2013, all four defendants were indicted, and
three have entered guilty pleas. (Id.) Defendant Washington intends to pursue a jury trial. (Id.)

On April 27, 2014, Defendant filed a counseled Motion for Discovery and Evidentiary Hearing
on the Issue of Racial Profiling/Selective Prosecution. (Doc. No. 126.) In his Motion for
Discovery, Defendant requested disclosure of all phony stash house robbery cases involving
confidential informants and undercover agents within the Eastern District of Pennsylvania and
the District of New Jersey from 2009 to the present. (Id.) The Motion specifically incorporated
a letter and exhibits that Defendant filed pro se on March 14, 2014. (Id. at 1.) The Government
opposed the Motion. (Doc. No. 127.) A hearing on the Motion was held on May 13, 2014, at
which Defendant was present.

On June 30, 2014, the Court issued an Opinion and Order, denying Defendant's Motion for
Discovery. (Doc. Nos. 135-36.) Shortly thereafter, on July 8, 2014, the Court received a pro se
Motion for Reconsideration of its June 30, 2014 Opinion and Order. (Doc. No. 134.) The
Government opposes the Motion (Doc. No. 146), and the Motion is now ripe for disposition.

As an initial matter, Defendant is represented by counsel and does not have a right to "hybrid
representation." United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012) (quoting McKaskle v.
Wiggins, 465 U.S. 168, 183 (1984)). Despite this "longstanding prohibition on 'hybrid

representation,'" id., Defendant has submitted various pro se documents, including the present Motion.  (See Doc. Nos. 121, 134, 137, 147.)  As he notes in his supporting brief, Defendant may not file pro se documents while he is represented by counsel.  (Doc. No. 137 at 12); see also, United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012) ("In light of the foregoing, we now hold that, except in cases governed by Anders, parties represented by counsel may not file pro se briefs.").  Id. at 579.  Defendant is represented by counsel, and therefore, this Court need not consider the present Motion, which was filed pro se.  See United States v. D'Amario, 328 F. App'x 763, 764 (3d Cir. 2009) ("[A] district court is not obligated to consider pro se motions by represented litigants.").  Nonetheless, the Court has reviewed Defendant's pro se Motion for Reconsideration.  For reasons that follow, the Motion will be denied.

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."  Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quotation omitted)).  Thus, a proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)).  However, "[a] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked.  It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'"  In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)).  Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration."  Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999).  Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."  In re Asbestos Products Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

In his Motion for Reconsideration, Defendant makes the following arguments: 1) The Court should grant the Motion in order to correct a clear error of law or fact, or to prevent a manifest injustice; 2) The Court erred by applying the rigorous standard of United States v. Armstrong, 517 U.S. 456 (1996), rather than applying a standard used by certain Circuit Courts; 3) The Court violated the Sixth Amendment by waiving Defendant's right to counsel; and 4) The Court re-characterized Defendant's selective prosecution claim and rendered a decision without giving Defendant an opportunity to have his argument decided as submitted.  (Id. at A.)  The Court will briefly address each issue.

Defendant's first argument, that the Court committed a clear error of law or fact and caused a manifest injustice, is simply a summary of the standard for granting a motion for reconsideration.  (See id. at 1.)  The substance of this claim actually appears in Defendant's second argument.  There, he contends that the Court should not have applied a rigorous standard under Armstrong because Defendant was only required to present "some evidence" of the sting operations' discriminatory effect.  In Armstrong, the Supreme Court explained that "[t]he justifications for a

rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Armstrong, 517 U.S. at 468. Therefore, the Court held that defendants seeking discovery in aid of a selective prosecution claim must demonstrate that the challenged federal prosecutorial policy: 1) had a discriminatory effect and 2) was motivated by a discriminatory purpose. Id. at 465-66 (quotations omitted). In order to demonstrate a discriminatory effect in a race case, the defendant must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not." Id. at 469. This is the rigorous standard the Court applied when considering Defendant's Motion for Discovery. In order to establish a discriminatory effect, defendant needed to produce some evidence that similarly-situated individuals of another race could have been, but were not, targeted for phony stash house robberies in the Eastern District of Pennsylvania. Because he failed to do so, inter alia, the Court denied the Motion.

In support of his argument that a less rigorous standard applies, Defendant relies on two cases from outside the Third Circuit. First, he cites to United States v. Jones, 159 F.3d 969 (6th Cir. 1998), a case in which the Sixth Circuit reversed the district court's denial of an African American defendant's discovery motion in aid of a selective prosecution claim. In doing so, the Court of Appeals found that the defendant presented evidence of outrageous police conduct that demonstrated that the police intentionally targeted him because of his race. Id. at 977. To satisfy the discriminatory effect prong, the defendant presented evidence that law enforcement only referred him and his co-defendant for federal prosecution and declined to refer eight non-African Americans who were also arrested. Id. at 978. The Sixth Circuit found that the defendant "set forth 'some evidence' tending to show the existence of discriminatory effect that warrant[ed] discovery on his selective prosecution claim." Id. (quoting Armstrong, 517 U.S. at 468).

Jones is dissimilar from the case at hand for two reasons. First, the defendant in Jones successfully demonstrated discriminatory intent on the part of the police. Here, as noted in the Court's prior Opinion, Defendant Washington failed to establish that the Government's use of fictitious stash house sting operations is motivated by a discriminatory purpose. United States v. Washington, No. 13-cr-171-2, 2014 WL 2959493, *7 (E.D. Pa. June 30, 2014). In his present Motion, Defendant has not presented any new evidence which would warrant reconsideration of this finding. Instead, he contends that "[i]f the A.T.F. and United States Attorney's Office only target minority neighborhoods using minority informants, then their potential targets will be a large percentage of minority defendants, if not all minority defendants." (Doc. No. 147 at 8.) However, Defendant has failed to present any evidence that Government agents in the Eastern District of Pennsylvania conduct these sting operations in the manner he describes.

Second, the defendant in Jones presented "some evidence" of a discriminatory effect by showing that a specific group of eight non-African Americans were not referred for federal prosecution like he was. Defendant Washington has not produced similar evidence in this case. In support of his Motion for Discovery, he pointed to the fact that since 2009, the Government has brought at least four phony stash house robbery cases in this district, in which only African Americans were charged. (Doc. No. 126 at ¶ 5.) He also submitted numerous pro se filings which included various news articles discussing the Government's use of these types of sting operations across the country, filings in phony stash house robbery cases from outside the Third Circuit, and

Department of Justice policy guidelines regarding the impermissibility of racial profiling by federal law enforcement agencies.  (Doc. Nos. 121, 134.)  Presently, Defendant cites to a recent analysis by USA Today which revealed that out of 635 phony stash house defendants, 91% were minorities, primarily African American and Hispanic. (Doc. No. 147 at 14.) Contrary to Defendant's beliefs, this is not "some evidence" of a discriminatory effect as defined by the Supreme Court.  As this Court already noted in its prior Opinion regarding phony stash house prosecutions in this district, these "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."  Id. at *6 (quoting United States v. Bass, 536 U.S. 862, 864 (2002)).  Furthermore, news articles about the way these sting operations are conducted in other major cities have no bearing on Defendant's claims regarding alleged selective prosecutions in the Eastern District of Pennsylvania.

In his present Motion, Defendant also mistakenly relies on United States v. James, 257 F.3d 1173 (10th Cir. 2001), another case in which an African American defendant challenged the district court's denial of his motion for discovery in aid of a selective prosecution claim.  In finding that the defendant failed to produce some evidence tending to show a discriminatory effect, the Tenth Circuit explained:

> Of course, a defendant cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group.  Rather, the proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group.

Id. at 1179.  As the Court previously noted in its June 30, 2014 Opinion, that is precisely what Defendant Washington has done here.  The fact that the Government has only charged African American defendants in at least four phony stash house robbery cases in this district since 2009 does not establish that similarly situated whites were not targeted in the initial sting operations. Therefore, Defendant is not entitled to discovery on his selective prosecution claim.

The Court is equally unpersuaded by Defendant's two remaining arguments. Specifically, Defendant incorrectly asserts that the Court somehow waived his right to counsel when it considered his pro se filings in support of his Motion for Discovery.  (Doc. No. 137 at 10.) When Defendant first submitted these documents, he specifically requested that the Court put these materials on the docket and review them in connection with his "pending and future motion to dismiss [the] indictment for selective prosecution and racial profiling."  (Doc. No. 121 at 1.) Similarly, in his counseled Motion for Discovery, Defendant expressly incorporated his pro se letter and exhibits as additional support for the Motion.  (Doc. No. 126 at 1.)  As requested, the Court considered these documents when rendering its Opinion on Defendant's Motion for Discovery.  The Court also notes that only Defendant can waive his Sixth Amendment right to counsel, and he has not done so in this case.  Despite the fact that Defendant has submitted numerous documents on his own, the Court has never construed these filings as a waiver of Defendant's right to counsel.  Therefore, this argument is also without merit.

4

BY THE COURT:


<u>/s/ Joel H. Slomsky</u>
JOEL H. SLOMSKY, J.

---

Finally, Defendant contends that the Court inappropriately re-characterized his underlying selective prosecution claim.  (Doc. No. 137 at 14.)  In its prior Opinion, the Court noted as follows:

> While Defendant refers to "selective prosecution" in his Motion, he actually complains of racial profiling or "selective law enforcement."  However, "the same analysis governs both types of claims: a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that <u>Armstrong</u> outlines for selective prosecution claims."   <u>United States v. Barlow</u>, 310 F.3d 1007, 1010 (7th Cir. 2002).

<u>Washington</u>, 2014 WL 2959493 at *3 n.2.  In the present Motion for Reconsideration, Defendant challenges the Court's characterization of his "selective prosecution" claim as a "selective enforcement" claim.  Because the same analysis governs both types of claims, the Court would have reached the same result regardless of how the claim was cast.  Therefore, Defendant's final argument is without merit.  For this reason, and all those listed above, Defendant's Motion for Reconsideration will be denied.