IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIMINAL NO.   13-171-2 |
| **ASKI WASHINGTON,**<br>        a/k/a "Ski," | : | |

PROTECTIVE ORDER CONCERNING DISCLOSURE OF
JENCKS ACT AND GIGLIO MATERIAL

AND NOW, this             day of February 2015, upon the motion of the United States for a protective order restricting the dissemination of material provided pursuant to the Jencks Act and pursuant to its obligations under Giglio v. United States, 405 U.S. 150 (1972), as well as any material containing the names of witnesses identified in Jencks and Giglio materials, including but not limited to the government's exhibit list and list of trial witnesses, the Court has considered the papers filed.  The Court has weighed the need of the defendants to review trial-related material with the government's interest in preserving the safety of its witnesses.  The Court finds that the following restriction does not unduly impair the defendant's ability to assist counsel in preparing for trial and makes a reasonable accommodation for the safety of the government's witnesses in the face of a significant risk to their safety.  The government's motion is GRANTED.  It is hereby

ORDERED

that counsel for defendant shall not provide copies of the following material to his client, shall not provide any writing to the defendant which discloses the substance of that material, and shall not allow the defendant to copy and keep this material:   statements of non-agent government witnesses; reports of interview of non-agent government witnesses; plea agreements of

government witnesses; letters, if any, from the government disclosing information about non-agent government witnesses; transcripts of recordings identifying the undercover agent and non-agent government witness by name, the government's exhibit list, the government's list of trial witnesses, and the government's motion seeking this order.   This order does not prohibit counsel from showing these materials to the defendant and discussing these materials at meetings with the defendant or from reading from or discussing these materials in telephone conversations with the defendant.

                              **BY THE COURT:**

_____
**HONORABLE JOEL H. SLOMSKY**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.   13-171-2 |
| ASKI WASHINGTON,<br>    a/k/a "Ski," | : | |

**UNITED STATES' MOTION FOR PROTECTIVE
ORDER CONCERNING DISCLOSURE OF JENCKS ACT,
GIGLIO AND RELATED MATERIALS**

This matter is scheduled to begin trial on February 23, 2015.   The government has agreed to turn over the *Jencks Act* and *Giglio* material prior to trial to avoid delays in the trial.

The United States moves for a protective order to limit the dissemination of the written documents which the government will disclose to the defendant in anticipation of the start of the trial of this matter.   These materials relate to the government's trial witnesses, all of whom will now be identified via the *Jencks* and *Giglio* material.   The government seeks an order prohibiting defense counsel from leaving any copies of this material in the possession of the defendant, who is currently incarcerated at the Federal Detention Center (F.D.C.) in Philadelphia.   As explained below, the government seeks this order out of a concern that allowing the defendant to possess copies of this material within the F.D.C. would endanger the safety of the government's witnesses in federal custody and witnesses who are not in custody.

The materials which the government will disclose concerning a number of government witnesses consist of *Jencks Act* and *Giglio* material, witness interview summaries which are not technically *Jencks* Act material but which the government nonetheless discloses to assist defense counsel in his trial preparation, statements taken from witnesses, plea agreements and criminal histories.   These materials fully and completely disclose the information obtained

from government witnesses.

The government believes that the dissemination of these materials within F.D.C. Philadelphia, or outside the prison, among friends and acquaintances of the defendant, would place the witnesses at significant risk of harm.   With regard to the incarcerated witnesses, the government believes a security risk exists because it is well documented that cooperators are disliked by prisoners, and there is some risk to any cooperator who is imprisoned.   But the risk would be considerably heightened here by several factors if the disclosed materials were left with the defendants in the F.D.C.   First, the cooperation of the government's prisoner witnesses is not hypothetical or speculative as it may be for many inmates presently housed at the F.D.C.  The disclosed material explicitly describes witness cooperation and sets out their own words incriminating the defendant.   Second, the defendant has a substantial motive to incite threats, intimidation or violence against the cooperating witnesses.   The defendant is facing substantial incarceration if he is convicted at trial, including minimum mandatory sentences consecutive to significant guidelines sentences.   Third, the defendant has been in custody in this district at the F.D.C. for a number of months.   This has given him time to establish contacts within the F.D.C. which he might use in an effort to have other inmates harass, threaten, or intimidate a prisoner witness, even if housed in a separate unit.

A different risk exists for witnesses who are not housed in the F.D.C.   In this case, they consist of both a cooperating individual, an undercover agent, and law enforcement officers who have provided information in this case, and who will be subpoenaed for trial.   Witness intimidation is generally a serious problem in Philadelphia.   The government seeks to limit the opportunities for this defendant to engage in such intimidation during the weeks which will elapse between the release of the material and the trial of this matter, or to have others engage in

such intimidation on his behalf.

In providing the *Jencks Act* and *Giglio* material, the government will redact the personal information of the individual witnesses as a way to minimize the security risk to all of these witnesses however the names of each witness will be contained within the individual documents.   However, the defendant and his acquaintances are familiar with some, if not all, of the government's witnesses, so redaction of their personal information in no way assists in protecting them from the risks associated with cooperation.

The government believes that there is a significant risk that if defense counsel provides the defendant with copies of the witness materials in this case that the materials will be circulated within the F.D.C. and possibly outside of the F.D.C.   Although the government has no specific information concerning the defendant's opportunity to do so, the government is aware of instances in the past in which material provided by the government to counsel, and by counsel to an incarcerated defendant, has been widely shown to other inmates at the place of incarceration.   This is a significant risk – whether done with or without the consent of the defendants – and poses the substantial risks described above.

For these reasons the government believes that these sensitive materials should not be allowed to reside or circulate within the F.D.C., or be provided to any party outside the F.D.C. who could copy and circulate such documents.   By keeping these materials out of the F.D.C. there will be no risk that other inmates will have possession of the actual transcripts and interview summaries in which witnesses cooperated and incriminated the defendant.   There will also be reduced risk that the names of the witnesses will be used for intimidation.   By keeping these materials out of the F.D.C. there will be less basis for verification and full knowledge of any witnesses' cooperation, and hopefully a lowered risk to the witnesses.

This will not adversely affect the defendant in his legitimate preparation for trial. First, the government proposes no limit to the defendant's access to these documents in the presence of his counsel. The defendant may extensively review and discuss every document the government provides, providing that he does so in the presence of counsel. Counsel may spend as much time as he needs with his client with these documents while preparing for trial. We propose no limitation on the defendant's use of these documents in the presence of counsel. Counsel must, however, take such documents with him when he leaves the F.D.C. Second, these documents are not for investigative purposes but for cross-examination. Their true value is in court during the government witnesses' testimony, and in the defendant's cross examination of those witnesses. Finally, the defendant will be able to discuss these documents with counsel both in person and over the phone. There is no limitation on the telephonic disclosure of the information from these documents to the defendant, as long as such telephonic disclosure occurs with counsel. Should the government learn of the defendant attempting to advise others outside the prison to intimidate witnesses, the government would immediately advise the Court of such activity and seek to take further protective action. For now, the only limitation the government seeks is on the physical possession of these documents and its information by the defendant.

The Court is empowered to enter a protective order for the protection of witnesses before it. The All Writs Act, 28 U.S.C. § 1651(a) empowers a federal district court to issue "all writs necessary or appropriate in aid of [its . . . ] jurisdiction[]. 28 U.S.C. § 1651(a). The government has not located a case in which a court has written about this specific request, but there are decisions which show the issuance of protective orders and in which no question of the power of a court to grant such orders is raised. E.g. United States v. Nicolapolous, 30 F.3d 381, 383 (2d Cir. 1994) (not questioning the power of the district court to prohibit lawyers from

sharing certain *Jencks Act* materials with their clients, and finding no prejudice to defendants from the order; government raised concerns about safety of individuals if disclosed); United States v. Pichay, 988 F.2d 125 (9th Cir. 1993) (unpublished – text available on Westlaw) (affirming a district court's protective order preventing disclosure of documents as not *Jencks Act* material); United States v. Truong Dinh Hung, 667 F.2d 1105 (9th Cir. 1981) (permissible for district court to issue protective order requiring defense counsel not to disclose information to clients which was being litigated as to whether it was *Jencks Act* material); United States v. Hakim, 1989 WL 12029 (D.D.C. January 25, 1989) (Gesell, J.) (Protective order issued ordering *Jencks Act* material disclosed for a limited purpose and not to be disseminated).  Furthermore, several Judges in this Court have entered similar orders in drug conspiracy cases, most recently in the experience of the undersigned government counsel by Judge Eduardo C. Robreno in the matter of United States v. Kareem Smith, et al, Cr. No. 07-737; Judge Berle M. Schiller in the matter of United States v. Devon Brinkley, et al., Cr. No. 09-60, and Judge Lawrence F. Stengel in the matter of United States v. Ramel Moten, et al., Cr. No. 10-620.   In addition, in a case involving an armed Hobbs Act robbery, United States v. Aaron Smith and Kareem Watson, Cr. No. 10-489, Judge Juan R. Sanchez also signed a similar order.

For these reasons the government seeks an order prohibiting counsel for the defendant from providing physical copies of all of the materials covered by the *Jencks Act* and *Giglio* (impeachment materials related to government witnesses), to the defendant or any other party, or providing their substance in writing, including:   statements of non-agent government witnesses; summaries of interviews with non-agent government witnesses; plea agreements with government witnesses; letters if any providing information about non-agent government witnesses; documents identifying undercover agents and non-agent government witnesses;

criminal histories; and this motion.    Counsel may not permit the defendant to copy this information and keep that copy, for this would frustrate the order.    Such order shall not preclude defense counsel or a member of his or her staff from reviewing such materials with the defendant either in person or by telephone.[1]

        Respectfully submitted,

        ZANE DAVID MEMEGER
        United States Attorney


        /s/Salvatore L. Astolfi
        SALVATORE L. ASTOLFI
        Assistant United States Attorney

Date: February 5, 2015

---

[1]   The government does not believe that an order simply requiring the defendant not to allow anyone else to read these materials would be effective.    The defendant has a strong incentive to disseminate the documents, and it would be nearly impossible to monitor his actions in the F.D.C., and therefore to detect any such sharing of the material.

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the United States' Motion for Protective Order Concerning Disclosure of *Jencks Act* and *Giglio* Material to be served on counsel for the defendants listed below, by the district court clerk's electronic filing system on the date shown below:

Jarvis Law Associates, P.C.
20 North Third Street
Suite 402a
Philadelphia, Pa 19106

Attn: Roland Jarvis, Esquire
Attorney for Askia Washington

  /s/Salvatore L. Astolfi
SALVATORE L. ASTOLFI
Assistant United States Attorney

Date: February 5, 2015