IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.   13-171 |
| v. | : | DATE FILED: |
| ASKIA WASHINGTON,<br>a/k/a "Ski," | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1951 (conspiracy to<br>commit robbery which interferes with<br>interstate commerce - 1 count) |
| | : | 18 U.S.C. § 1951 (attempted robbery<br>which interferes with interstate<br>commerce - 1 count) |
| | : | 21 U.S.C. § 846 (conspiracy to possess<br>with the intent to distribute 5 kilograms or<br>more of cocaine - 1 count) |
| | : | 21 U.S.C. § 846 (attempted possession with<br>intent to distribute 5 kilograms or<br>more of cocaine - 1 count) |
| | : | 18 U.S.C. § 924(c)(1)(A) (possession of a<br>firearm in furtherance of a crime of<br>violence and a drug trafficking<br>crime - 1 count) |
| | : | 18 U.S.C. § 922(g)(1) (convicted felon in<br>possession of a firearm - 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notice of forfeiture |

## SUPERSEDING INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

1.      The illegal sale, distribution, possession with intent to distribute, and trafficking, of controlled substances, that is, cocaine, are activities which affect interstate commerce.

2.      From at least in or about February 2013, through on or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**ASKIA WASHINGTON,**
**a/k/a "Ski," and**

Dwight Berry, a/k/a "Muff," Antonio Ellis, a/k/a "Pooh," and Jermau Johnston, a/k/a "Mau," charged elsewhere, conspired and agreed to commit robbery, which robbery would unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, in that defendant WASHINGTON, along with Berry, Ellis, and Johnston, conspired to unlawfully take and obtain illegal controlled substances, that is, cocaine, from the person and in the presence of other persons against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property in their possession, all in violation of Title 18, United States Code, Section 1951(a), (b)(1), and (b)(3).

**MANNER AND MEANS**

It was part of the conspiracy that:

3.      Dwight Berry was introduced by Person #1, a person known to the grand jury, to Person #2, also known to the grand jury, and Berry believed that Person #2 was seeking help to arrange a robbery of at least ten kilograms of cocaine.

4.      Defendant ASKIA WASHINGTON and Dwight Berry expressed interest in participating in a home invasion robbery of drug dealers and undertook to plan and recruit the robbers for a home invasion robbery to steal cocaine, the proceeds of which robbery would be divided among defendant WASHINGTON, Dwight Berry, Person #1, Person #2, and the other robbers.

2

5.      Defendant ASKIA WASHINGTON and Dwight Berry planned that the robbers would steal cocaine from the victim drug dealers by invading their stash house and using firearms to control the victims.

6.      Dwight Berry recruited Antonio Ellis and Jermau Johnston, each of whom agreed to carry out with defendant WASHINGTON, Dwight Berry and Person # 2 the planned home invasion robbery to steal cocaine, the proceeds of which robbery would be divided among the conspirators.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendant ASKIA WASHINGTON, along with Dwight Berry, Antonio Ellis and Jermau Johnston, committed the following overt acts, among others, in Philadelphia, in the Eastern District of Pennsylvania:

### The February 18, 2013 Meeting

1.      On or about February 18, 2013, Dwight Berry met with Person #1.   During their meeting, in response to Person #1's explanation that he had a friend who was a drug courier who knew a location from where a large amount of cocaine could be stolen, Berry immediately expressed an interest in committing a robbery of the stash location and was willing to meet with Person #1's "Folks" (Person #2) to further discuss the details of the robbery.   During the meeting, Berry discussed plans to divide the kilos of cocaine that he expected to steal during the intended home invasion robbery.

### The February 20, 2013 Meeting

On or about February 20, 2013:

2.      As previously arranged, Dwight Berry met with Persons #1 and #2.   Berry

3

was introduced to Person #2 by Person #1.

        3.     During their meeting, in response to Person #2's explanation that he is a drug courier who picks up kilogram quantities of cocaine from a drug stash house in Philadelphia and in the past when he has picked up the kilograms of cocaine from the stash house he has observed in excess of 10 kilograms of cocaine at the location, Berry immediately expressed interest in committing a home invasion robbery of the stash location.   When Person #2 informed Berry that there are two males guarding the stash house and they are both armed with firearms, Berry was not phased and repeatedly stated, "it's a go."   Also during the conversation with Person #2, Berry indicated a willingness to shoot the intended robbery victims, stating, "we ain't gotta shoot nobody unless we have to .... if they get crazy, we ready though."

### The March 4, 2013 Meeting

        4.     On or about March 4, 2013, defendant WASHINGTON, Berry and Person #3 who is unknown to the grand jury, met with Person #1 and Person #2.   Berry introduced defendant WASHINGTON and Person #3 as the individuals who will be committing the robbery with Berry.   During the meeting, defendant WASHINGTON and Person #3 expressed their desire to take part in the robbery.   During the conversation defendant WASHINGTON and Berry discussed the details of the robbery including their willingness to shoot the men guarding the drug stash house if necessary.   Defendant WASHINGTON stated, "I ain't gonna hit you (referring to Person #2), but say if I come there ... I hit him from the rip.   I ain't gonna kill him, but I hit him just make him to know that I ain't fucking playing no games."   Defendant WASHINGTON also stated "I'm walking in with my gun out."   Berry told Person #2, that "it's gonna get done," (referring the home invasion robbery).   Berry added, "however it go down, that shit's gotta go

4

down."

## The March 5, 2013 Meeting

5.      On March 5, 2013, Berry met with Person #1.   During their meeting, Berry again discussed his intention of utilizing firearms to commit the robbery and the possibility that they may have to shoot someone during the robbery.   Berry stated, "we are going to have two n****s with the guns, one n**** gonna being tying the n**** up."   Berry further explained that if Berry and his conspirators, "... gotta let some shots off ... before the cops get there, we can still get away ... ."   During their discussions, in response to Person #2 expressing concern about whether defendant WASHINGTON had experience in committing home invasion robberies, Berry stated that defendant WASHINGTON is a "gun" and "puts work in."   Also during the conversation, defendant BERRY told Person #2, "this is what I do."   In response to Person #2's question as to whether the planned home invasion was Berry's first, Berry responded, "fuck no!"

## The March 12, 2013 Phone Call

On or about March 12, 2013:

6.      Berry spoke with Person #1 on the telephone.   During their conversation, Berry discussed distributing the 10 or more kilograms of cocaine they intend to steal.   Berry stated the current rate for a kilogram of cocaine is "40" ($40,000).

7.      In a second telephone conversation, Berry told Person #1 that "everybody is a go."

## The March 15, 2013 Attempted Armed Home Invasion Robbery

On or about March 15, 2013:

8.      Defendant WASHINGTON, along with Berry, Ellis and Johnston met with

5

Person #1 at a pre-arranged location.   Berry and Johnston arrived at the location in a Ford F-150 and Person #1 arrived in a minivan.   Berry and Johnston walked over to the minivan and Berry asked Person #1 if he could bring his firearms into Person #1's minivan to which Person #1 consented.   Berry walked to his F-150, removed an Eggo Waffle box containing two loaded firearms and a 10 zip ties and brought them to Person #1's minivan.   Berry and Johnston entered the minivan with Person #1.   Once inside the minivan, Berry handed the Eggo Waffle box containing the firearms and zip ties to Johnston who was seated in the minivan's rear seat. Defendant WASHINGTON and Ellis then arrived at the location in a Chrysler 300.   Johnston told Berry that he needed to get gloves, at which point Berry and Johnston along with Person #1 drove to a convenience store followed by defendant WASHINGTON and Ellis in the Chrysler 300. Once at the store, Johnston and Ellis entered the store and Johnston purchased gloves to use in the robbery.

9.     Berry and Johnston along with Person #1 drove to a second pre-arranged location with defendant WASHINGTON and Ellis following in the Chrysler 300, where they met with Person #2.   Upon meeting with Person #2, defendant WASHINGTON, Ellis and Person #2 then entered the minivan.   Berry instructed Person #2 to review the details of the planned robbery with everyone.   Person #2 explained that the target of the robbery was a house at which 10 kilograms of cocaine would be found.   Johnston asked Person #2, "so what's up with the door," referring to the entrance to the stash house.   Person #2 then explained that the building would be guarded by a man at the door, who carried a firearm; that a second man further inside the home would also be armed; that the second man would have control of the drugs; that the drugs would be stored in a white cooler; and that there would be no money found in the house.   In response to

6

Person #2's question, who is going in to the stash house with WASHINGTON and Berry, Johnston said, "both of us," referring to him and defendant Ellis.   In response to Person #2's question to Ellis and Johnston, asking if they were good with the plan, they both responded affirmatively. Johnston then told Person #2, after he entered the stash house, he should close the door but not lock it.   Defendant WASHINGTON and Berry stated that they would have to get in and out of the stash house quickly and they would enter through the front door and leave through the back.   Berry stated that the robbery should only take three to four minutes to complete however it may take longer because they had to tie the victims up.

10.     Defendant WASHINGTON and Berry, Ellis and Johnston confirmed that they wanted to proceed with robbing the stash house.

11.     The men then discussed their plan of action; that they would all drive to a staging area closer to the target; that when they made their assault on the drug house, two of them would be the first to enter the house; that they would be armed; that they would likely bind the people inside the house; that they would treat Person #2, who would be in the house, as if he were another victim to evade the suspicion by the drug dealers.

12.     Defendant WASHINGTON left the minivan and entered the Chrysler 300. Berry, Ellis, and Johnston, and Persons #1 and #2 drove to the staging area and defendant WASHINGTON followed in the Chrysler 300 which contained his gloves, mask, an empty back pack, a can of lighter fluid and a lighter.

All in violation of Title 18, United States Code, Section 1951(a).

7

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 1 and 3 through 6 and Overt Acts 1 through 12 of Count One of this indictment are incorporated here.

        2.      On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**ASKIA WASHINGTON,**
**a/k/a "Ski," and**

Dwight Berry, a/k/a "Muff," Antonio Ellis, a/k/a "Pooh," and Jermau Johnston, a/k/a "Mau," charged elsewhere, attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery, in that defendant WASHINGTON, along with Berry, Ellis, and Johnston, unlawfully attempted to take and obtain, and aided and abetted the attempted unlawful taking and obtaining of, property, that is, cocaine, from other persons against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and property, that is, by using loaded firearms to threaten and control the victims and steal cocaine from them.

        In violation of Title 18, United States Code, Sections 1951(a) and 2.

8

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      Paragraphs 1 and 3 through 6 and Overt Acts 1 through 12 of Count One of this indictment are incorporated here.

       2.      From at least on or about February 2013, through on or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**ASKIA WASHINGTON,**
**a/k/a "Ski," and**

Dwight Berry, a/k/a "Muff," Antonio Ellis, a/k/a "Pooh," and Jermau Johnston, a/k/a "Mau," charged elsewhere, conspired and agreed to knowingly and intentionally possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

       All in violation of Title 21, United States Code, Section 846.

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 15, 2013, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**ASKIA WASHINGTON,**
**a/k/a "Ski," and**

Dwight Berry, a/k/a "Muff," Antonio Ellis, a/k/a "Pooh," and Jermau Johnston, a/k/a "Mau,"

charged elsewhere, knowingly and intentionally attempted to possess with the intent to distribute,

and aided and abetted the attempted possession with intent to distribute, five kilograms or more of

a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

In violation of Title 21, United States Code, Section 846, and Title 18, United

States Code, Section 2.

10

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      Paragraphs 1 and 3 through 6 and Overt Acts 1 through 12 of Count One of this indictment are incorporated here.

       2.      On or about March 15, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**ASKIA WASHINGTON,**
a/k/a "Ski," and

Dwight Berry, a/k/a "Muff," Antonio Ellis, a/k/a "Pooh," and Jermau Johnston, a/k/a "Mau," charged elsewhere, knowingly possessed, and aided and abetted the possession of, a firearm, that is, a Hi-Point, model JHP45, 45 caliber semi-automatic pistol, serial number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds of ammunition, in furtherance of a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy to commit attempted robbery which interferes with interstate commerce, and attempted robbery which interferes with interstate commerce, in violation of Title 18, United States Code, Section 1951(a), and conspiracy and attempted possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 846.

       In violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 15, 2013, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### ASKIA WASHINGTON,
### a/k/a "Ski," and

Dwight Berry, a/k/a "Muff," and Antonio Ellis, a/k/a "Pooh," charged elsewhere, having been

convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate

commerce a firearm, that is, a Hi-Point, model JHP45, 45 caliber semi-automatic pistol, serial

number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model

Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds

of ammunition.

In violation of Title 18, United States Code, Section 922(g)(1).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violations of Title 18, United States Code, Sections 924(c)(1) and 922(g)(1), as set forth in this indictment, defendant

**ASKIA WASHINGTON,**
**a/k/a "Ski,"**

shall forfeit to the United States of America the firearm involved in the commission of these offenses, that is, a Hi-Point, model JHP45, 45 caliber semi-automatic pistol, serial number X4134949, loaded with nine live rounds of ammunition; and a Charter Arms, model Police Bulldog, .38 caliber revolver with an obliterated serial number, loaded with six live rounds of ammunition.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 924(d)(1).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

_____
ZANE DAVID MEMEGER
UNITED STATES ATTORNEY