IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER: 13-171-2 |

### SUPPLEMENTAL SENTENCING MEMORANDUM

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire, respectfully requests the Court to consider the following additional documents and thoughts in connection with sentencing scheduled for May 4, 2016.

  The government, in its sentencing memorandum, has alerted the Court to the fact that it previously filed an Information pursuant to 21 U.S.C. § 851 that increases Mr. Washington's mandatory minimum sentence from ten to 20 years' incarceration on Counts Three and Four, the drug counts. This development only magnifies the Orwellian and intellectually dishonest nature of this case. For the following reasons, the Court should reject the imposition of a mandatory minimum sentence in this matter.

  First, this case has become the classic "tail wagging the dog" prosecution. Reverse sting stash-house-robberies are designed, according to the ATF, to get potential Hobbs Act robbery offenders off the street—the dog, so to speak. The bone thrown to ensnare these potential Hobbs Act offenders is the lure of stealing drugs from a "stash house"—the tail of this canine. Yet, the 20-year mandatory minimum that the government says Mr. Washington actually faces has nothing to do with ridding the streets of violent Hobbs Act robbers and everything to do with

punishing a drug dealer. Section 851 is directed at drug dealers, not reverse sting Hobbs Act robbers. For this Court to accede to the government's contention that Mr. Washington faces a mandatory minimum sentence of 20 years' incarceration is to give the government unbridled power to unfairly manipulate a defendant's sentencing exposure in reverse sting cases where higher quantities are relevant in inducing the defendant to commit the crime of robbery and not indicative of whether the defendant is really a legitimate drug dealer.

If the reverse sting in this case involved 0.9 kilograms of non-existent cocaine, Mr. Washington would not be facing a mandatory minimum sentence. If the lure was 4.9 kilograms, Mr. Washington would be facing a mandatory minimum of ten years. But the ATF agents in this case came up with a figure of ten kilograms undoubtedly to incentivize Mr. Washington and the others to take the bait and agree to commit the robbery. In the mind of the ATF, Mr. Washington and other potential Hobbs Act stash house robbers might not have been interested in stealing ½-kilo but would be ready to steal 10 kilograms. But section 851 was designed to punish real drug dealers who are prepared to distribute actual quantities of controlled substances, not defendants like Mr. Washington who may not otherwise have committed the robbery but for law enforcement artificially increasing the quantity of drugs to induce them to do so. The evil sought to be addressed by section 851 is to punish drug dealers, not Hobbs Act robbers. It is intellectually dishonest to punish Mr. Washington pursuant to the mandatory minimum provisions of the drug statutes when, at bottom, this case is a reverse sting robbery prosecution.

There has been sea-change in the prosecution of drug offenses in this country over the past few years. The sentencing guidelines and mandatory minimums have become less draconian for offenses involving real drugs. There even has been a reduction in criminal prosecutions for

drug offenses. Yet the government seeks a guideline range sentence of 30 years to life on Mr. Washington with a floor of 20-years imprisonment in a case where no actual drugs were involved and where the ring leader of this case, Dwight Berry, got fifteen years. There is something wrong here and only this Court is in a position to put a stop to it.

    Finally, Mr. Washington asks the Court to consider the attached letters from his sister and niece. The letter written by his sister, Natasha Jones, is particularly poignant because it touches on the shameless conduct of their mother who sold the family's food stamps to feed her drug habit. As stated in the original sentence memorandum, a Dickensian upbringing does not excuse criminal conduct but it helps to explain it. At bottom, Mr. Washington has family who love him and await his release.

    Respectfully submitted,

    /s/ Mark S. Greenberg

_____
MARK S. GREENBERG, ESQUIRE
Attorney for Defendant