IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 13-171-2** |
| **ASKIA WASHINGTON**<br>    a/k/a "Ski" | : | |

**GOVERNMENT'S AMENDED SENTENCING MEMORANDUM**

**I.     BACKGROUND**

On June 9, 2015, a jury found defendant Askia Washington guilty of Counts One, Two, Three, and Four of the indictment in which he was charged as follows: conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count Two); conspiracy to possess with the intent to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count Three); attempted possession with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count Four); carrying a firearm during and in relation to a crime of violence and to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six).  The jury acquitted Washington on Count Five and the government withdrew Count Six.  The charges and Washington's subsequent convictions arose out of his participation in an attempted armed Hobbs Act robbery of what he and his coconspirators believed to be a drug stash house.

As a result of his convictions, at the time of sentencing, Washington is a facing a sentencing guidelines range of 360 months to lifetime imprisonment.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Penalties

**Counts One and Two - Hobbs Act Conspiracy and Attempted Robbery**

The maximum term of imprisonment is 20 years, three years supervised release, a $250,000 fine, and a $100 special assessment on each count.

**Counts Three and Four - Conspiracy to Possess with the Intent to Distribute and Attempted Possession with the Intent to Distribute Five Kilograms or More of Cocaine**

The maximum term of imprisonment is life, including a mandatory minimum of 20 years in prison[1], a fine of $20,000,000, at least 10 years to lifetime supervised release, and a $100 special assessment on each count.

**Total Maximum and Mandatory Minimum Sentence** is: lifetime imprisonment, including a 20 year mandatory minimum, 10 years to lifetime supervised release, a $40,500,000 fine, and a $400 special assessment.

### B.     Sentencing Guidelines Calculation

The Probation Office calculated the defendant's advisory guideline range to be 360 months to lifetime imprisonment.   The government agrees with this calculation.

## III.    ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should accept the calculation of the advisory guidelines as set forth above, and impose an appropriate sentence within the applicable sentencing guidelines range.

The Supreme Court has declared:   "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United

---

[1] The PSR incorrectly states that Washington's mandatory minimum for Counts Three and Four is 10 years. However, Washington has a prior felony drug conviction which enhances the applicable mandatory minimum to 20 years imprisonment.   The government provided the requisite notice pursuant to 21 U.S.C. § 851 prior to trial.   See docket entry 202.   The enhancement also impacts the applicable statutory maximum sentence, the term of supervised release and fine, all of which are correctly set forth in this section of the government's sentencing memorandum.

States, 128 S. Ct. 586, 596 (2007).   Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).   Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).[2]

**Consideration of the 3553(a) Factors**

**(1)     The nature and circumstances of the offense and the history and characteristics of the defendant.**

Askia Washington was a willing participant in a scheme involving a group of men who set out to commit an armed robbery of what they believed to be a drug stash house.   Washington was part of a "crew" assembled by his coconspirator and friend, Dwight Berry, and was to play a major role in the execution of the scheme to rob 10 or more kilograms of cocaine, and, if necessary, shoot

---

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"  United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

and kill those from whom they intended to steal the cocaine.   Washington was caught on tape, on two separate occasions - March 4, 2013 and March 15, 2013 – discussing his plans to commit the robbery and boasting about his intent to shoot if necessary.   Washington made clear that he would stop at nothing to successfully carryout the intended robbery.

Washington has a lengthy history of arrests and convictions.   From the age of 16 Washington has amassed 16 arrests which resulted in five convictions for offenses including attempted robbery, PWID, simple and aggravated assault, carrying a firearm, and possession of a controlled substance.   His remaining charges were dismissed.

Also, Washington was on state parole for his aggravated assault and PWID cases at the time he engaged in the criminal activity which led to his conviction in this case.   Clearly he was not deterred by his past brushes with the criminal justice system or his prior sentences of incarceration.

**(2)** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

Washington's offenses of conviction are very serious.   He and his coconspirators intended to commit a violent armed robbery of what they believed to be a drug stash house for the purpose of stealing kilograms of cocaine.   Fortunately this was a sting operation and they were apprehended on March 15, 2013 when they met at the staging area to review and finalize their plan.   There is no doubt that Washington and his coconspirators demonstrated their propensity for committing violent acts and they were completely willing to carry out their plan.

**(3)** **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The Court's sentence in this case must deter others like Washington and his coconspirators who would consider engaging in similar serious criminal conduct.   Thus the need for general deterrence is great.   Washington must also be deterred.   Throughout the years, Washington has

repeatedly violated the law by engaging in very serious criminal conduct. On one occasion he was sentenced to 12-24 months imprisonment following his convictions for aggravated assault and carrying a firearm. These convictions arose out of an incident where Washington was seen firing shots from his vehicle, and when police responded and ordered him to remain still, he failed to comply and instead drove his vehicle directly at police officers at a high rate of speed. On another occasion, Washington served a sentence of 3 to 6 years in prison following his conviction for PWID. This conviction arose out of Washington being found in possession of in excess of 21 grams of "crack" cocaine and three grams of marijuana.

Clearly Washington has not learned from these past experiences. It is evident from his involvement in this case that he intended to continue down the wrong path. Through his past criminal activity and his words and actions in this case, he has demonstrated that he continues to present a serious risk of harm to the general public. Therefore, the Court's sentence in this case must focus on protecting the public from Washington.

**(4)** **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The PSR revealed that Washington has a lengthy history of alcohol and substance abuse. He has never received treatment for these problems and it appears that he could benefit from counseling while incarcerated. The government therefore requests that as part of the Court's sentence in this case, Washington be required to undergo drug and alcohol treatment and counseling.

Washington dropped out of high school during his 9th grade year and never obtained his GED. He did undergo some training to operate a forklift and install track pipe. The defendant also established and operated his own pest control business shortly before his arrest and incarceration in this case. Overall, Washington does not have a lengthy history of employment

and has not developed any specialized skill that has been put to use for an extended period of time. Therefore, it appears that he could benefit from vocational training while incarcerated. He should also be required to obtain his GED while incarcerated.

**(5)** **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Washington is not unlike many other federal defendants in that his offenses of conviction are very serious and his has a lengthy history of arrests and convictions. In addition, Washing has a lengthy history of drug and alcohol use. Adherence to the recommended guideline range is the only course for assuring that Washington's sentence is consistent with those imposed nationwide on similarly situated offenders. The government's recommendation of a within-guidelines sentence is based in part on the fact that such a sentence serves the vital goal of uniformity and fairness. Reference to the sentencing guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the best available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.

**(6)** **The need to provide restitution to any victims of the offense.**

Restitution is not an issue in this case.

**VI.** **CONCLUSION**

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a sentence within the applicable sentencing guidelines range of 360 to life imprisonment.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


/s Eric B. Henson
ERIC B. HENSON
Assistant United States Attorney
Deputy Chief, Violent Crimes and Firearms

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by the district court clerk's electronic filing system upon:

Mark S. Greenberg, Esquire
920 Lenmar Drive
Blue Bell, PA   19422
Greenberg@markgreenberg.com

/s Eric B. Henson
ERIC B. HENSON
Assistant United States Attorney
Deputy Chief, Violent Crimes and Firearms

DATED:   May 4, 2016